Turley, J.
delivered the opinion of the court.
This is an action of debt, brought in the circuit court of Davidson county by Porter and Partee against Dillahunty. The declaration contains three counts: the 1st for goods, wares and merchandise, sold and delivered; the 2d, upon a bill of exchange for one hundred and forty-six dollars eighty six cents drawn by Dillahunty on Thos. J. Porter in favor of Porter and Partee payable on demand, and the'3rd, for money paid by the plaintiff, for the use of the defendant, for money lent to him, and for money due from him upon an. account stated. To this declaration the defendant pleaded nil debet, upon which there was issue and a verdict and judgment for' the defendant.
Upon the trial it appeared in evidence that the defendant Dillahunty, had been the attorney general for the state, for the county of Maury, and that Thos." J. Porter had been the county court clerk for that county, and as such, had received fees belonging to Dillahunty, but to what amount was unknown, that for the purpose of ascertaining the amount, Wm. E. Erwin, Porter’s successor in office, purporting to act by the mutual request of Porter and Dillahunty, did on the 2'3d day of June 1842, enter into an examination of the papers in his office and after making the same, reported in writing that Porter had received of such fees the sum of two hundred and forty dollars, for which Dillahunty had executed no receipts upon the execution docket. Upon this written statement of *572 the clerk, Dillahunty drew an order on Thos. J. Porter in the words and figures, following, viz:
“Columbia, June 24th, 1842.
General Porter: — You will please settle with Porter and Partee the sum of one hundred and forty-six dollars and eighty-six cents, on the within, and this shall be your receipt for so much, by so doing you will oblige,
Yours, &c. Edmund Dillahunty.”
Sometime afterwards, but when does not appear from the proof, the statement which had been made out of the fees received by Porter, and which had not been receipted for by Dillahunty, together with the order drawn thereon, was forwarded to Porter and returned by him to Wm. E. Erwin who made it, with an endorsement thereon in the handwriting of Porter to the following effect.
“Mr. Wm. E. Erwin: — I disclaim any right and power on your part to make any settlement here referred to. I did want to settle with the sheriff and attorney general and every body; they refused till too late; I will settle with nobody till settled with by the sheriff. You can make irresponsible statements from your books of course but not for me.
Thos. J. Pouter.”
After this paper and order were thus returned to Erwin, they remained a considerable time in his hands before the plaintiff knew of the fact, and there is no proof showing at what time information was given to Dillahunty by the plaintiff, that Porter had refused to pay the order drawn upon him in their favor if ever. The proof further shows, that Porter at the time the order was drawn, was solvent in the State of Mississippi, where he resided, but was insolvent in Tennessee. There is also some proof of indebtedness on the part of Dillahunty to the plaintiff, but for what or to what amount does not appear. The court charged the jury, “that since the passage of the act of 1762, the drawer of an order, such as *573 that offered in evidence in this case, was entitled to have the order presented for acceptance, and in case of non-acceptance, to have protest and notice thereof given to him, unless the jury should believe that the drawer of the order at the time of its draft, had no reasonable ground to expect that the order would be paid, in which case it would be a fraud on the drawee, and therefore, the drawer would not be entitled to have presentment made and notice given him, that it would make no difference whether suit was brought on the order or the original consideration of indebtedness, as the rule above stated would apply in either case. That it was not sufficient for the jnry to believe, that the defendant had sustained no •injury by the want of due presentment, protest and notice, provided, the defendant when he drew the order had a reasonable ground to believe it would be paid. That the statute referred to, was not only intended to give the holder of an order a new remedy, but to confer upon the drawer a new right if he had a reasonable ground for drawing; and that in an action upon the original consideration, the law was not, that the defendant would be bound unless he could show, or unless the jury were satisfied, that he had received some injury from the neglect of the creditor to make presentment and protest, and give notice; but that the law was, that if the drawer had reasonable ground for drawing, he is entitled to have the order presented for acceptance, and in case of nonacceptance, to have protest and notice given him.” •
This charge is based upon the assumption that the paper drawn by the defendant upon Porter is an order and not a bill of exchange; and lays down the law positively, that on all such instruments, the drawer before he can be held responsible in any way whatever, is entitled to have the order dishonored and protested and notice thereof, as in cases of bills of exchange. It is true that the circuit judge does not pretend to define the time in which this shall be done, but leaves it at *574 large, probably from the intrinsic difficulty of fixing it: he no doubt felt that to require that all this should be done according to strict commercial usage in relation to negotiable paper, would upon paper of this description be productive of some startling consequences, and that it would be impossible to establish any other general rule which did not run instantly into the very thing he was laboring so assiduously to avoid, viz: the responsibility of the drawer, unless he had been injured in consequence of the neglect of the drawee in demanding payment and giving notice of the refusal to make it.
By the common law, orders were not such evidences of debt as could be sued upon; they were not negotiable and demand and protest and notice were not required of the holders of them, and they constituted no evidence of indebtedness on the part of the defendant who had to be sued upon his original liability, and could only defend himself by shewing that the order had been drawn and received by the plaintiff and that he neglected within a reasonable time to present it for payment, and give notice of a refusal, whereby he had lost his debt, which he otherwise would have secured. But it is argued both by the circuit judge and the attorneys for the plaintiff in this case, that the act of 1762, ch. 9, has changed the whole law upon this subject and placed orders upon the footing of commercial paper; that they must in every instance be sued upon, and that this cannot be done unless they have been duly dishonored by demand of payment and refusal, protested and notice thereof given to the drawer.
This act provides in sec. 4th, “that when any person or persons shall by order in writing, signed by his or her proper hand, direct the payment of any sum or sums of money in the hands or possession of any other person or persons to the bearer or any person or persons whatever, the money therein specified shall by virtue thereof be due and payable to such person or persons to whom the same is drawn payable and may *575 be put in suit against the person or persons on -whom the same shall be drawn after acceptance thereof by him or them to whom the same shall be made payable and recover damages.”
The 5th section provides, “that no person whatsoever shall prosecute any suit against any person or persons who shall give such order for the money therein mentioned before the same shall have first been protested for nonacceptance and notice thereof given to the drawer before such suit shall be brought, and if any suit shall be brought on any such order before notice and refusal to pay as aforesaid the plaintiff or plaintiffs shall be nonsuited and pay cost.” Now the statute, alters the common law, so far as to permit a suit against the., acceptor or drawer of an order upon the order, which is thereby made evidence of the fact of indebtedness as a bill, single, promissory note and bill of exchange, but at the same time prohibits it against the drawer upon the order without a previous demand, protest, and notice of nonpayment, This statute does not make the order negotiable, neither does it cause it to operate as an extinguishment of the original liability, as. being a security of higher dignity, but merely gives an action, upon it, which when against the drawer, must be upon demand, protest and notice; all of which will have tobe (in our’ apprehension) according to the strictness of commercial usage-upon bills of exchange, because the order is used as a bill of“ exchange in such ease. But by no fair construction; can. this, be made to apply to all cases of orders, whether- relied upon as the basis of a suit or not; indeed; it would be productive of much mischief in practice, if such were the cas&. -phe consequence would be, that no suit would be maintained against the drawer of an order,, when he had a reasonable expectation of its being paid when he drew it, without all the formality of presentation, protest, and notice. A vast amount of little’ transactions are daily arranged by orders: to encumber them *576 with the formalities of demand, protest, and notice, would be destructive of their utility, and would open a door to extensive petty frauds and impositions. This has not been done, but the rights of the parties in all such cases, left as they were at common law, unless they sue upon the order, in which case they cannot complain, if they be required to comply with the formalities of the statute or be non-suited.
The charge of the circuit judge, then, is erroneous. But the defendant in error attempts to get out of this difficulty by-insisting here, that this instrument of writing is not an order, but a bill of exchange. We do not think so. It is a draft upon a particular fund; a debt supposed to be due by J. T. Porter to the defendant, and which was repudiated by Porter. It is not a general instruction to pay, and was not intended or expected to be paid, if the indebtedness were denied.
We are, therefore, of opinion, that the judgment of the circuit court should be reversed, and the case remanded for a new trial.